**LOWENSTEIN SANDLER LLP**
Gavin J. Rooney
Jewel M. Watson
65 Livingston Avenue
Roseland, New Jersey 07068
Attorneys for Defendant Vivint, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAULETTE VENDITTO, on behalf of herself and all others similarly situated, | : <br> : <br> :     **Document Electronically Filed** <br> : |
| Plaintiff, | : |
| v. | :     **CIVIL ACTION NO.  2:14-cv-04357-JLL-JAD** |
| VIVINT, INC. f/k/a APX Alarm Security Solutions, Inc., | : <br> : <br> : |
| Defendant. | : <br> : |

---

### DEFENDANT VIVINT, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)

---

29897/2
10/27/2014 **33407597**.1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

REPLY ARGUMENT ............................................................................................................1

I.      ALL OF PLAINTIFF'S CLAIMS PREMISED ON THE CONTENTION THAT THE AGREEMENT IS A "RETAIL INSTALLMENT CONTRACT" SHOULD BE DISMISSED BECAUSE THE AGREEMENT DOES NOT INVOLVE THE TIMED SALE OF GOODS OR SERVICES.......................................................................1

II.     PLAINTIFF HAS NOT DEMONSTRATED THAT THE ALARM AGREEMENT VIOLATES THE HIP REGULATIONS. ...................................................3

III.    THE COMPLAINT DOES NOT STATE A TCCWNA CLAIM BECAUSE IT DOES NOT ALLEGE FACTS SUFFICIENT TO SHOW THAT SECTIONS 15 AND 16 OF THE AGREEMENT VIOLATE CLEARLY ESTABLISHED NEW JERSEY LAW. ...................................................................................................4

IV.     THE ENTIRETY OF SECTION 5 OF THE AGREEMENT IS A WARRANTY PROVISION AND, ACCORDINGLY, COULD NOT VIOLATE N.J.S.A. 56:12-16 OF TCCWNA. ...................................................................................................8

V.      PLAINTIFF'S INDIVIDUAL COUNT SHOULD BE DISMISSED BECAUSE IT DOES NOT ALLEGE FACTS TO PLAUSIBLY SET FORTH A CFA CLAIM...................................................................................................................9

CONCLUSION...................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

AXA Corp. Solutions Assur. v. Great Am. Lines, Inc.,
No. 10-02023, 2012 WL575050 (D.N.J. Feb. 21, 2012) .................................................5, 6, 7

D'Ercole Sales v. Fruehauf Corp.,
206 N.J. Super. 11 (App.Div. 1985) ...............................................................................10

Lala v. ADT Sec. Servs.,
2010 U.S. Dist. LEXIS 125313 (D.N.J. Nov. 24, 2010).........................................................6, 7

Martinez-Santiago v. Public Storage,
No. 14-302, 2014 WL 4053960 (D.N.J. Aug. 28, 2014) .......................................................6, 7

McGarvey v. Penske Automotive Group, Inc.,
639 F.Supp.2d 450 (2009) ...............................................................................10

McGarvey v. Penske Automotive Group, Inc.,
No. 08-5610, 2011 WL 1325210 (D.N.J. March 31, 2011)........................................................5

New Jersey Citizen Action v. Schering-Plough Corp.,
367 N.J. Super. 8 (App.Div. 2003) ...............................................................................9

Perez v. Rent-A-Center, Inc.,
186 N.J. 188 (2006) ...............................................................................2

Synnex Corp. v. ADT Security Serv., Inc.,
394 N.J. Super. 577 (App. Div. 2007) ...............................................................................5

**STATUTES**

N.J.S.A. 17:16C-1.................................................................................................2, 3

N.J.S.A. 56:12-16.................................................................................................8

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1, 10

Vivint, Inc. respectfully submits this memorandum of law in reply to Plaintiff Paulette Venditto's Opposition to Vivint's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## REPLY ARGUMENT

**I.    ALL OF PLAINTIFF'S CLAIMS PREMISED ON THE CONTENTION THAT THE AGREEMENT IS A "RETAIL INSTALLMENT CONTRACT" SHOULD BE DISMISSED BECAUSE THE AGREEMENT DOES NOT INVOLVE THE TIMED SALE OF GOODS OR SERVICES.**

In our opening brief, Vivint explained that the Complaint's RISA- and DDRISA-related claims all fail because the Agreement is not a "retail installment contract" within the meaning of those statutes. The Agreement does not pertain to the "retail purchase price" of goods or services paid in installments over time; quite to the contrary, it involves monthly payments for an ongoing service, much like monthly invoicing for cellular telephone, cable television, or high-speed Internet service. This case is nothing like the transactions where merchants sell furniture or other things to poor or unsophisticated consumers, who finance the purchase price through installment payments made over time, that RISA and DDRISA were enacted to govern.

Plaintiff responds by mischaracterizing Vivint's argument, suggesting that Vivint contends that the Agreement escapes RISA's and DDRISA's purview simply because "it does not expressly impose a finance charge." Pl. Br. at 11-12. While it is true that the Agreement does not impose a finance charge, the more basic point is that the Agreement fails the definition of a retail installment contract because Plaintiff did not "own" anything at the end of the Agreement's term that she did not own at its outset – and, accordingly, she was not paying the retail purchase price to acquire ownership of anything over time. She was, instead, paying for

---

[1]   All defined terms used in this reply brief have the same definitions set forth in Vivint's opening brief.

Vivint's ongoing services, just as a cellular telephone customer pays for ongoing service to her cellphone. Contrast N.J.S.A. 17:16C-1 (a retail installment contract is one "evidencing an agreement to pay the retail purchase price of goods or services … or any part thereof, in two or more installments over a period of time … which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of such goods upon full compliance with the terms of such retail installment contract."); Perez v. Rent-A-Center, Inc., 186 N.J. 188, 209 (2006) (RISA was enacted to "regulat[e] charges associated with the timed sale of goods.").

Plaintiff further suggests that the Agreement's 39-month term somehow transforms it into a "retail installment contract." Pl. Br. at 13. But a term contract for an ongoing service is no more a "retail installment contract" than if the transaction were structured on a month-to-month basis. To state the obvious, many cellular service contracts are structured as term contracts, where the customer receives a discount in return for promising to use the company's service for a lengthy period of time. But the real issue is not whether the contract has a term, but rather whether it involves the timed sale of goods or services paid by installments where the consumer takes ownership at the end of the period of payments. And, in any event, the Agreement did not have a true end-date because it provides for automatic renewal at the end of the initial 39-month term. Compl., Ex. A, § 2.4. Accordingly, the Agreement is more akin to a month-to-month contract of indefinite duration, which even Plaintiff distinguishes from the retail installment contracts governed by RISA and DDRISA.

Finally, Plaintiff argues that the Agreement combines the sale of the monitoring equipment with the charge for the ongoing service, since it discloses possible charges for the equipment – even though the Agreement charged Plaintiff "$0" for the equipment and advised that "no financing charge or cost of credit" would be applied. Pl. Br. at 14-15. This unlikely

claim fails for an obvious reason – if Plaintiff was charged "$0" and received the equipment for free, then she owned the equipment immediately upon its installation and did not need to make the monthly payments in order to acquire title.  In a retail installment contract, by contrast, the customer acquires outright ownership of the good or service *only* after making *all* of the installment payments. N.J.S.A. 17:16C-1(b). To the extent that the communication equipment (i.e. the SIM card) installed on Plaintiff's premises belonged to Vivint, the Agreement permitted Vivint to retrieve that equipment – irrespective of whether the parties' relationship ended after the first month, the 39th month, or after ten years.  Compl., Ex. A, § 12.

For these reasons, the Agreement is a service contract, not a retail installment contract, and therefore all counts of the Complaint premised upon supposed violations of RISA and DDRISA -- whether pled under the CFA, TCCWNA, or otherwise -- should be dismissed.

## II.   PLAINTIFF HAS NOT DEMONSTRATED THAT THE ALARM AGREEMENT VIOLATES THE HIP REGULATIONS.

In our opening brief, Vivint explained that the Complaint fails to state a claim that the Agreement violates the HIP Regulations because the alleged disclosure violation pertains to charges for an ongoing service, and ongoing services are not within those regulations' purview. The Complaint alleges that the Agreement violates the HIP Regulations because it "omitt[ed] the 'Activation Fee' from the 'Total Cash Price' disclosed on the contract," and the Activation Fee was assessed to activate the ongoing security monitoring service.  Pl. Br. at 23.  Significantly, Plaintiff tacitly agrees that the HIP Regulations do not govern disclosures of charges for ongoing services. Id.   Instead, Plaintiff claims that the cost of the equipment was "an inseparable component" of the "Total Cash Price" list on the Agreement which, Plaintiff says, should have included the Activation Fee.

-3-

But as explained above, the Agreement is clear that Plaintiff was charged "$0" as the "installation & equipment charge." The "Total Cash Price" was simply the sum of the monthly charges of the "service fee for monitoring." Even more significantly, however, the "Activation Fee" at issue was expressly charged to *activate the service*. Because Plaintiff concedes that the HIP Regulations do not apply to a charge to activate or provide ongoing services, this claim fails because the Activation Fee was a *service* fee.

Additionally, Plaintiff's claim also fails because the "Total Cash Price" disclosed an amount sufficient to encompass all charges that the Plaintiff would pay during the Agreement's 39-month term, even if the $99 Activation Fee were included. While the Complaint contends that the Total Cash Price was simply the sum of the monthly service charges assessed under Section 2.3, the disclosed amount overstated the amount Plaintiff would actually pay because it did not account for the discount given on the monthly service fees. Not only does this deprive Plaintiff of an ascertainable loss necessary to bring a CFA claim (as Plaintiff concedes at page 25 of her brief), but it also means there is no underlying violation due to a supposed failure to include the amount of the Activation Fee in the dollar figure disclosed as the Total Cash Price. To state it more simply, the Total Cash Price could not have deceived or misled Plaintiff because it disclosed more than the total amount of the Activation Fee, the monthly fees, and other fees she would pay during the 39-month term of the Agreement.

III.   **THE COMPLAINT DOES NOT STATE A TCCWNA CLAIM BECAUSE IT DOES NOT ALLEGE FACTS SUFFICIENT TO SHOW THAT SECTIONS 15 AND 16 OF THE AGREEMENT VIOLATE CLEARLY ESTABLISHED NEW JERSEY LAW.**

In Vivint's opening brief, we explained that in addition to the lack of underlying violations of RISA, DDRISA, and the HIP Regulations, the Complaint's TCCWNA claims fail because (i) the Complaint does not allege facts sufficient to show that Sections 15 and 16 of the

Agreement violate a "clearly established" right, and (ii) TCCWNA exempts warranty provisions, such as those challenged by the Complaint, from its scope. "[T]he New Jersey legislature intended to impose [TCCWNA] liability *only* upon those vendors whose violation of a consumer statute was so clear that *no reasonable vendor* could fail to know that its conduct was prohibited." McGarvey v. Penske Automotive Group, Inc., No. 08-5610, 2011 WL 1325210, *4 (D.N.J. March 31, 2011)(emphasis added).  Neither the Complaint nor Plaintiff's brief offer any authority to show that Sections 15 and 16 meet this demanding requirement.  Quite to the contrary, Vivint presented the Court with ample New Jersey authority showing that such clauses are commonly enforced.

Plaintiff's own brief cites cases in which courts upheld limitation-of-liability provisions and exculpatory clauses in the context of alarm monitoring contracts. See Synnex Corp. v. ADT Security Serv., Inc., 394 N.J. Super. 577, 588-89 (App. Div. 2007) (finding that public policy favors the enforcement of exculpatory provisions in contracts for alarm systems, whether or not negligence is at issue).  Plaintiff attempts to distinguish the several cases Vivint cited that enforced similar exculpatory clauses, suggesting that their holdings are not so broad to endorse the provisions at issue here.  But such a parsing of the caselaw conveniently ignores the key question – which is whether the law is so unmistakable that the clauses violate a "clearly established" right of a consumer, in a way that "no reasonable vendor" could miss.

The number of cases validating limitation-of-liability provisions in security monitoring contracts demonstrates beyond question that Plaintiff's disagreement with Sections 15 and 16 of the Agreement is not the stuff of a TCCWNA claim.  In AXA Corp. Solutions Assur. v. Great Am. Lines, Inc., No. 10-02023, 2012 WL575050, *2-3 (D.N.J. Feb. 21, 2012), for example, the court evaluated a limitation-of-liability provision in a home security monitoring

contract that *(1)* "explicitly does not warrant a service free from errors and interruptions" and "provides … that [customers] 'sole and exclusive remedy' is correction of any errors" and *(2)* "disclaims any liability for indirect damages related to the [Defendants'] security system … even if any remedy fails of its essential purpose." Finding these provisions enforceable -- which are actually more restrictive than the Agreement at issue here -- the district court noted that "New Jersey courts have held that these provisions actually facilitate the sale and use of security systems, by appropriately allocating the responsibility to maintain insurance to the property owner." Id. at* 2-3; see also Lala v. ADT Sec. Servs., 2010 U.S. Dist. LEXIS 125313,F (D.N.J. Nov. 24, 2010) (court refused to invalidate provisions in alarm agreement that limited the alarm company's liability to the greater of $500 or 10% of the annual service fee in the event of any loss, damage, injury, or other consequential arising directly or indirectly from the service). Making clear that exculpatory provisions in home security contracts lie far from the kind of offensive provisions that violate TCCWNA, the court in AXA Corp. Solutions Assur. held that "public policy specifically favors the enforcement of exculpatory provisions in contracts for alarm systems, whether or not negligence is at issue." Id. at *4 (internal citation omitted).

Further, Sections 15 and 16 of the Agreement do not, as Plaintiff contends, seek to limit Vivint's liability for intentional, reckless, willful or wanton misconduct. Pl. Br. at 27. Section 15 provides an acknowledgment by the customer that he or she understands that: Vivint is "not an insurer of [the customer's] premises, property or personal safety of persons"; security systems will not always detect or prevent a home invasion; the service pricing is not dependent upon the value of the customer's premises or property; and it would be difficult to determine what percentage of a loss would be caused by Vivint's failure to perform. Section 15 functions to

limit Vivint's liability for injury that may spring from the alarm system's failure to deter or prevent harm that may be caused by others or acts of God.

The intent of Section 16 is similar, by addressing claims by third parties. Both Section 15 and 16 recognize that the property owner is in a better position than the security company to insure against the loss of that property, and these clauses are typically intended to facilitate security system contracts by allocating responsibility for the maintenance of insurance coverage, which is readily available to property owners. It is with this in mind that Section 15 informs the consumer that he or she may obtain a higher limitation for an additional charge, in which event a different rider would govern the liability related to the alarm's system failure. Compl. Ex. A at § 15. Accordingly, these sections accord with the public policy expressed by the courts in AXA Corp. Solutions, Lala, and other authority, and do not come close to violating a "clearly established" right sufficient to create a TCCWNA claim.

Moreover, as Vivint explained in its opening brief, Judge Simandle's opinion in Martinez-Santiago v. Public Storage, No. 14-302, 2014 WL 4053960 (D.N.J. Aug. 28, 2014), is materially different from this case because it addressed an attempt by a defendant to escape premises liability. Martinez-Santiago involved an owner of a storage unit complex that required the unit renters to sign a contract releasing the owner from any liability for injury due to an unsafe condition and indemnifying the owner against any claims that might be brought by the renter's invitees. But the present case does not involve premises liability; quite to the contrary, it was Plaintiff -- and not Vivint -- that owned the premises. Accordingly, Sections 15 and 16 do not implicate the policy concerns underlying premises liability and Martinez-Santiago does not apply here.

IV.    THE ENTIRETY OF SECTION 5 OF THE AGREEMENT IS A WARRANTY PROVISION AND, ACCORDINGLY, COULD NOT VIOLATE <u>N.J.S.A.</u> 56:12-16 OF TCCWNA.

Vivint explained in its opening brief that the Agreement's warranty provision cannot violate TCCWNA because warranty provisions are expressly excluded from TCCWNA's scope.  Plaintiff does not disagree with that assertion (nor could it, given the clear text of the statute), and instead tries to draw an artificial distinction between the Agreement's warranty provision and its exclusion for consequential and incidental damages. Pls. Br. at 33.

However, a full reading of Section 5 demonstrates that consequential and incidental damages are excluded as damages for a breach of warranty.  There can be no legitimate question that Section 5 is a warranty provision:

> This <u>warranty</u> does not include batteries or alarm screens.  We make no other express <u>warranty</u> including any <u>warranty</u> of merchantability of the system or its fitness for any special purpose.  We do not <u>warrant</u> that the system will always detect, or help prevent any burglary, fire, hold-up or other such event.  We do not <u>warrant</u> that the system cannot be defeated or compromised or that it will always operate.  This <u>warranty</u> does not cover repairs that are needed because of an accident, acts of God, your failure to properly use the system, or if someone other than us attempts to repair or change the system, or any other reason except a defect in the equipment or our installation.  <u>We are not liable for consequential or incidental damages.</u>  You agree that this is our only <u>warranty</u> and we have given you no other <u>warranty</u> for the system.

(Emphasis added).  Accordingly, this limitation on an award of consequential and incidental damages for breach of warranty is exempt from TCCWNA's reach.  <u>See</u> <u>N.J.S.A.</u> 56:12-16 ("No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; <u>provided, however,</u>

that this shall not apply to warranties."). Therefore, Plaintiff's TCCWNA theory fails to state a claim.

## V.      PLAINTIFF'S INDIVIDUAL COUNT SHOULD BE DISMISSED BECAUSE IT DOES NOT ALLEGE FACTS TO PLAUSIBLY SET FORTH A CFA CLAIM.

Plaintiff's allegations are insufficient to state a CFA claim. See New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App.Div. 2003) ("To state a claim under the CFA, a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss.") (internal citation omitted). In both the Complaint and Plaintiff's brief, Plaintiff offers mere conclusory allegations that Vivint "used unconscionable commercial practices," but fails to present any facts that substantiate this claim. In sum, the Complaint's theory of wrongdoing is that Vivint stood on its rights arising from a renewal of the Agreement by way of a telephone conversation. Pls. Br at 36. That does not amount to a CFA claim, but instead points to a contract dispute that should be pleaded as such.

Plaintiff ironically appears uncertain how Vivint's alleged actions rise to the level of a CFA claim. In her brief, Plaintiff states that Vivint's acceptance of her verbal renewal and the refusal to cancel "constitute an unconscionable commercial practice, deception, fraud, false, pretenses, false promises and/or misrepresentations in violation of the Consumer Fraud Act." Pl. Br. 35 (emphasis added.). To state the obvious, there is nothing fraudulent, deceptive, or unconscionable about an oral (and recorded) agreement to renew a contract. The real issue is the enforceability of the oral renewal, and Plaintiff herself concedes that this is a breach of contract claim.  Pls. Br. at 38 (characterizing Vivint's refusal to cancel the Agreements as "aggravating [the] breach" and the assessment of a $15 reprocessing fee as "compounding the breach."). A

-9-

contract dispute, such as the one at issue here, "is not per se unfair or unconscionable, and a breach ... alone does not violate a consumer protection statute." D'Ercole Sales v. Fruehauf Corp., 206 N.J. Super. 11, 25 (App.Div. 1985).

Vivint's renewal of the Agreement's term by a recorded telephone call is not an unlawful act prohibited by the CFA. Moreover, Vivint did not violate the CFA when it asserted its rights based upon that renewal of the Agreement. Furthermore, although Plaintiff's brief states that the assessment of a single $15 fee establishes unconscionability, the Complaint's scant allegations fail to set forth how the assessment of a single $15 fee shows "dishonest" acts in "bad faith." See McGarvey v. Penske Automotive Group, Inc., 639 F.Supp.2d 450, 464 (2009) ("[t]he New Jersey Supreme Court has explained that '[t]he standard of conduct that the term "unconscionable" implies is lack of good faith, honesty in fact and observance of fair dealing.'") Plaintiff has also not been able to identify how she has suffered an ascertainable loss, as the Complaint does not allege that Plaintiff actually paid the $15 fee. Lastly, the Complaint alleges that Vivint used "high pressure sales tactics"; however, Plaintiff's Complaint fails to set forth any supporting facts that show "dishonesty" or "bad faith" sufficient to make out an unconscionable commercial practice.

For these reasons, the Complaint's individual CFA count should be dismissed.

## CONCLUSION

Based on the foregoing, and based on Vivint's moving Brief, the Court should grant Vivint's Rule 12(b)(6) motion and dismiss the Complaint, with prejudice.

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

Attorneys for Defendant Vivint, Inc.


By:  /s/  Gavin J. Rooney
           Gavin J. Rooney, Esq.

Dated: October 27, 2014