<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAULETTE VENDITTO, on behalf of herself and others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>VIVINT, INC.,<br><br>      Defendants. | Civil Action No. 14-4357 (JLL) (JAD)<br><br><br>**OPINION** |

**LINARES,** District Judge**.**

This matter comes before the Court by way of Defendant's motion to dismiss Plaintiff's First Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docket Entry No. 14]. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion is **granted**. Plaintiff may file a Second Amended Complaint that cures the pleading deficiencies discussed herein **on or before December 12, 2014**.

**I.      BACKGROUND[1]**

On June 19, 2009, Defendant's door-to-door salesman came to Plaintiff's home to sell a home alarm system and monitoring services to Plaintiff. (Am. Compl., ¶ 6). At that time, Defendant was known as APX Alarm Security Solutions, Inc. (*Id*., ¶ 7). After discussing the features of the system and services, and the terms and conditions of the agreement, Plaintiff agreed

---

[1] The following facts are accepted as true solely for purposes of this motion.

to purchase the alarm system and monitoring services from Defendant. (*Id.*, ¶ 8). As such, the parties executed an Alarm System Purchase and Service Agreement (hereinafter, the "Alarm Agreement") and Defendant installed the alarm system equipment and set up the monitoring service on the very same day. (*Id.*).

Section 2 ("PRICE, PAYMENT, FINANCIAL DISCLOSURES AND TERMS") of the Alarm Agreement provided, in pertinent part:

a. "**2.1 ACTIVATION FEE**. $198.00 (Non-Refundable)." [The $198.00 is crossed out, with "99" handwritten in its place];

b. "**2.2 INSTALLATION & EQUIPMENT CHARGES**. $ _0__ (See SOP)

c. "**2.3 SERVICES FEE**. FOR MONITORING YOU WILL PAY US AS FOLLOWS:   INITIAL TERM OF CONTRACT: 39 MONTHS MONTHLY SERVICES FEE: $49.99 (plus any applicable taxes). [The $49.99 is crossed out, with "44.99" handwritten in its place.] THE TOTAL MONTHLY SERVICES FEE IS PAYABLE MONTHLY IN ADVANCE. THE FIRST MONTHLY SERVICES FEE IS DUE WHEN THE SYSTEM IS INSTALLED AND OPERATIONAL. THE TOTAL CASH PRICE YOU WILL PAY US FOR THE SERVICES PROVIDED IS $1,949.61, NOT INCLUDING APPLICABLE TAXES. THERE IS NO FINANCING CHARGE OR COST OF CREDIT (0% APR) ASSOCIATED WITH THIS AGREEMENT;

d. **2.4 TERM FOR SERVICES**. THE ORIGINAL TERM OF THIS AGREEMENT STARTS ON THE DAY THIS AGREEMENT IS SIGNED AND CONTINUES FOR THIRTY-NINE (39) MONTHS, AND WILL AUTOMATICALLY CONTINUE FROM YEAR TO YEAR THEREAFTER UNLESS CANCELLED

BY EITHER OF US IN WRITING NO LATER THAN THIRTY (30) DAYS
BEFORE THE END OF THE ORIGINAL TERM OR ANY RENEWAL TERM;

e.   **2.6 <u>CREDIT CHECK; LATE FEES.</u>** YOU AUTHORIZE US TO CONFIRM
YOUR CREDIT RECORD AND TO REPORT YOUR PAYMENT
PERFORMANCE UNDER THIS AGREEMENT TO CREDIT AGENCIES AND
CREDIT REPORTING SERVICES. IF YOU FAIL TO MAKE ANY PAYMENT
WHEN DUE, WE MAY, BY GIVING YOU WRITTEN NOTICE,
DISCONTINUE INSTALLATION, MONITORING, REPAIR SERVICE,
TERMINATE THIS AGREEMENT, AND RECOVER ALL DAMAGES TO
WHICH WE ARE ENTITLED, INCLUDING THE VALUE OF THE WORK
PERFORMED AND OUR LOSS OF PROFIT. IN ADDITION, WE MAY
IMPOSE A LATE CHARGE ON ALL PAYMENTS MORE THAN TEN (10)
DAYS PAST DUE IN THE MAXIMUM AMOUNT PERMITTED BY STATE
LAW.

(*Id*., ¶ 12).

On or about March 5, 2012, Plaintiff received a phone call from Defendant regarding
renewal of the Alarm Agreement. Defendant told Plaintiff that Defendant would extend the term
of the Alarm Agreement for 42 months and that Defendant would not increase the monthly services
fee during that time period. (*Id*., ¶ 37). Defendant failed to send a new contract for Plaintiff to
sign. (*Id*., ¶ 38). Plaintiff never provided her written authorization for any modifications or
extensions to the Alarm Agreement. (*Id*., ¶ 39).

On or about August 1, 2012 and September 5, 2012, Plaintiff called Defendant to cancel
the Alarm Agreement at the end of the initial 39-month term, on September 19, 2012. (*Id*., ¶ 40).

Defendant refused to cancel Plaintiff's contract, alleging that Plaintiff had previously agreed to renew the contract.  (*Id*., ¶ 41).

Plaintiff called Defendant to cancel the Alarm Agreement on or about February 21, 2013, and again on May 6, 2013. Defendant refused to cancel the Alarm Agreement each time.  Plaintiff continued to make monthly payments via electronic fund transfer ("EFT") from her checking account up to and including February 18, 2014.  (*Id*., ¶¶ 42, 43).

On February 20, 2014, Plaintiff sent Defendant a cancellation letter via certified mail, return receipt requested. The return postcard indicates that Defendant received the cancellation letter on February 24, 2014. (*Id*., ¶ 44).

Defendant sent Plaintiff a letter dated March 21, 2014 informing her that it was unable to withdraw the March 2014 monthly service fee from Plaintiff's checking account and assessed a $15 processing fee and a $3 late fee to her Vivint account.  (*Id.,* ¶ 45).

Defendant continued to refuse to cancel Plaintiff's contract, and instead sent Plaintiff an invoice dated April 15, 2014. The invoice covers the service period from April 15, 2014 to May 14, 2014 and includes a past due amount of $66.14. Copies of the March 21, 2014 letter and the April 15, 2014 invoice are attached as Exhibit D.  Plaintiff continues to receive monthly invoices from Defendant.   (*Id*., ¶¶ 46, 47).

In light of the foregoing, Plaintiff commenced this action on July 10, 2014 on behalf of herself and "all persons who, at any time on or after June 6, 2008, entered into an Alarm System Purchase and Services Agreement ("Alarm Agreement") with Defendant in New Jersey with terms the same as or substantially similar to the Alarm Agreement signed by Plaintiff." (*Id*., ¶ 48). Plaintiff filed an Amended Complaint on September 2, 2014, alleging the following claims on behalf of the purported class: (1) violation of the Retail Installment Sales Act ("RISA"), N.J.S.A.

17:16C-1, et seq., and the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8–1 et seq.;

(2) violation of the Door-to-Door Retail Installment Sales Act ("DDRISA"), N.J.S.A. 17:16C-

61.5; (3) violation of the Home Improvement Practices Regulations, N.J.A.C. 13:45A-16.1 et seq.;

and (4) violation of the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"),

N.J.S.A. 56:12-14 – 18.  In addition, the Amended Complaint asserts a claim for violation of the

NJCFA on behalf of the named Plaintiff, alone.  This Court's jurisdiction over this matter is

premised on 28 U.S.C. § 1332(d).

Currently before the Court is Defendant's motion to dismiss Plaintiff's Amended

Complaint pursuant to Rule 12(b)(6).


## II.    LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 62, 678

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In determining the

sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the

complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See Phillips

v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  Additionally, in evaluating a plaintiff's

claims, generally "a court looks only to the facts alleged in the complaint and its attachments

without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20

F.3d 1250, 1261 (3d Cir. 1994).

## III.    DISCUSSION

### A.    Count One – Violation of RISA and NJCFA

Count One alleges that the Alarm Agreement is a "retail installment agreement" as defined by RISA and that Defendant's actions in charging an Activation Fee constitutes a violation of RISA inasmuch as said charge is not authorized by any provision of RISA.  Defendant moves to dismiss Count One on the basis that the Alarm Agreement is not a "retail installment contract" within the meaning of RISA.  In particular, Defendant maintains that the Alarm Agreement is a contract for the provision of an ongoing service and not for the timed sale of goods; as such, it is not a "retail installment contract" within the meaning of RISA.

RISA prohibits:

> [Any] seller, sales finance company, or holder [from] charg[ing], contract [ing] for, collect[ing] or receiv[ing] from any retail buyer, directly or indirectly, any further or other amounts for costs, charges, insurance premiums, examination, appraisal service, brokerage, commission, expense, interest, discount, fees, fines, penalties or other things of value in connection with retail installment contracts or retail charge accounts other than the charges permitted by this act, except court costs, attorney fees and the expenses of retaking and storing repossessed goods which are authorized by law.

N.J.S.A. § 17:16C–50.  Count One alleges that Defendant's RISA violation constitutes a violation of, *inter alia*, the New Jersey Consumer Fraud Act.[2]  In particular, Plaintiff alleges that "Defendant's violations of RISA constitute unconscionable commercial practices, deception, fraud, false pretense, false promises and/or misrepresentations in violation of the CFA."  Plaintiff

_____

[2] *See generally Perez v. Rent-A-Center, Inc.,* 186 N.J. 188, 220 (2006) ("Here, Rent–A–Center has not suggested, even obliquely, any conflict between the CFA and RISA, let alone one of a direct and unavoidable nature, nor do we perceive one. Accordingly, the acts must be construed in concert with each other and Rent–A–Center's contention that only one can be applicable at a time must be rejected.").

further alleges that she and members of the purported class suffered an ascertainable loss in the amount of $99.00—the amount they were charged for the Activation Fee.

As a preliminary matter, it is unclear whether Count One asserts two separate claims (violation of RISA and violation of NJCFA) or a single claim of violation of the NJCFA (by virtue of Defendant's alleged violations of RISA). For purposes of this motion, the Court construes Count One as alleging a violation of the NJCFA premised on Defendant's actions in charging fees that are not permitted under RISA—namely, the Activation Fee. *See generally Korrow v. Aaron's, Inc.,* 2011 WL 3794231, at * 2 (D.N.J. Aug. 25, 2011) (concluding that there is no private right of action under RISA, but noting that the Supreme Court of New Jersey has allowed RISA claims to be asserted under the NJCFA).

Having carefully considered the parties' submissions on the issue, the Court finds that it cannot rule on the merits of Defendant's argument because the theory underlying this claim has not been properly set forth in the Amended Complaint. In particular, while Defendant correctly notes that the Alarm Agreement provides for the provision of an ongoing monitoring service, it is not entirely clear based on the facts pled, whether the Alarm Agreement *also* provides for the sale of the alarm equipment that was installed in Plaintiff's house. In other words, it is not clear to the Court based on the facts pled whether, at the end of the original 39 month term, Plaintiff retained all ownership rights in the alarm equipment or whether Plaintiff was obligated to return the equipment to Defendant.

For example, paragraph 12 of the Amended Complaint alleges that "installation and equipment charges" were "$0." Paragraphs 24 and 25, however, make reference to a Schedule of Protection, which is allegedly referenced in Section 2.2 of the Alarm Agreement, and lists retail prices for the alarm equipment and installation. *See* Am. Compl., ¶ 25 ("Keypad & Siren" $399.00,

"Door/Window" $99.00, "Door" $99.00, "Window" $99.00, "Motion" $195.00, "Key Fob" $99.00, "Lifetime" $199.00, "Installation" $199.00, and "Installation Charge" $198.00."). The Amended Complaint further alleges that pursuant to paragraph 12 of the Alarm Agreement:

> If service is canceled or this agreement is terminated for any reason, you authorized [sic] us to remotely disconnect your communicator from the Center and/or enter your premises to disconnect your system from our monitoring equipment and remove our communications equipment and software and all of our signs and decals from your premises for our then prevailing disconnect fee.

(Am. Compl., ¶ 26). Although not articulated in Count One, Plaintiff's brief in opposition to Defendant's motion to dismiss argues that "the monthly payments under the [Alarm Agreement] are not merely for monthly [monitoring] services, but necessarily encompass payment for the installation and purchase of the alarm equipment installed at the beginning of the contract." (Pl. Opp'n Br. at 14).[3] Adding to the confusion of the issue of ownership of the alarm equipment is Defendant's statement that "plaintiff was not entitled to 'own' anything as a consequence of having made the monthly service payments. Instead, plaintiff owned the alarm equipment after the three-day right of recession had expired." (Def. Br. at 12).

Although it is not the Court's role to assess the actual merits of Plaintiff's claims on a motion to dismiss, a properly pled complaint must plead sufficient facts (in the context of each and every claim asserted) which, if accepted as true, would allow the Court to draw the reasonable inference that the Defendant is guilty of the misconduct alleged. The distinction of whether or not Plaintiff's retained ownership rights in the alarm equipment at the conclusion of the term of the Alarm Agreement is clearly material to the Court's analysis as to facial plausibility of this

---

[3] It is "axiomatic" that a plaintiff cannot amend its complaint by way of a brief in opposition to a motion to dismiss. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1998) (citation omitted).

claim.  *See, e.g., Perez v. Rent-A-Center, Inc.*, 186 N.J. 188, 209-210 (2006) (concluding that agreement at issue was subject to RISA because, like most rent-to-own consumers, plaintiff would receive title of the goods at the fulfillment of the lease).  Count One, as currently pled, fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure inasmuch as it fails to provide Defendant with adequate notice of the particular nature of the claim being asserted against it. Count One is therefore dismissed *without* prejudice.[4]  To the extent Plaintiff chooses to amend this claim, Plaintiff shall include all facts necessary to substantiate her theory that the Alarm Agreement constitutes a "retail installment contract" within the meaning of RISA[5] and that the Activation Fee imposed on her by virtue of the Alarm Agreement was not authorized by RISA. To be clear, each count of a properly pled complaint must include all facts pertinent to that particular claim and in support of Plaintiff's theory of the claim.

---

[4] Because the Court finds that Count One fails to meet the Rule 8(a) pleading standard as it relates to the RISA aspect of the claim, the Court need not address whether Plaintiff has adequately stated a violation of the NJCFA (premised on the RISA violation).

[5] *See, e.g., Perez*, 186 N.J. at 188 ("We are satisfied that the language of RISA was intended to cover agreements like the ones between Rent–A–Center and Perez. Like most rent-to-own consumers, Perez entered into the transactions with Rent–A–Center in order to become the owner of the goods. She took possession of the goods pursuant to instruments that renewed automatically and that were reflected on Rent–A–Center's books, not as weekly leases, but as long term arrangements of 90 to 120 weeks, respectively. A portion of each of Perez's payments was assigned to defray the cost of the goods.").

**B.     Count Two—Violation of DDRISA**

Count Two alleges that the "Notice of Cancellation" that Defendant provided to Plaintiff and those similarly situated violates DDRISA because, *inter alia*, by stating that the Activation Fee is "Non-Refundable," Defendant misrepresented the 3-day right to rescind the contract and receive a full refund pursuant to DDRISA at N.J.S.A. 17:16C-61.5.   (Am. Compl., ¶ 76). Defendant moves to dismiss this claim on the basis that it shares the same deficiency as Count One—namely that the Alarm Agreement is a service contract, not a retail installment contract, and thus is not subject to DDRISA, which applies only to retail installment contracts.

For the reasons discussed above, the Court dismisses Count Two for failure to meet the Rule 8(a) pleading standard inasmuch as it fails to provide Defendant with sufficient notice of the nature of the claim being asserted against it.   To the extent it is Plaintiff's position that the Alarm Agreement constitutes a retail installment contract, within the meaning of DDRISA, Count Two must be amended to include sufficient facts in support of such theory.   As currently pled, Count Two provides no facts whatsoever on the issue of whether the Alarm Agreement called for the provision of goods (namely, the alarm equipment) in addition to monthly monitoring services. Defendant's motion to dismiss this claim is granted.   Count Two is hereby dismissed without prejudice.

**C.     Count Three—Violation of the Home Improvement Practices Regulations**

Count Three alleges that the Alarm Agreements entered into by Plaintiff and those similarly situated are "Home Improvement Contracts" as defined by the HIP regulations at N.J.A.C. 13:45A-16.1A. It further alleges that by omitting the cost of the "Activation Fee" from the "Total Cash Price" listed on the face of the contract, the Alarm Agreements entered into by Plaintiff and those

similarly situated fail to set forth the total price or other consideration to be paid by the buyer in violation of the HIP regulations at N.J.A.C. 13:45A-16.2(a)(12)(iii) and the CFA.

The Division of Consumer Affairs has promulgated extensive "Home Improvement Practices" regulations "to deal with practices susceptible to consumer-fraud violations, such as may be found under home-improvement contracts." *Cox v. Sears Roebuck & Co*., 138 N.J. 2, 16 (1994). Violations of those regulations constitute "unlawful acts" within the meaning of [the New Jersey Consumer Fraud Act] N.J.S.A. 56:8-2. "In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations." *Id*. at 18.

The HIP regulations, which were thus adopted to implement the statutory provisions set forth in the CFA and Contractor's Registration Act,[6] expand upon the definition of "home improvement" set forth in the Contractor's Registration Act to further specify that:

> "**Home improvement" means the** remodeling, altering, painting, repairing, renovating, restoring, moving, demolishing, or modernizing of residential or noncommercial property or the making of additions thereto, and includes, but is not limited to, the construction, **installation**, replacement, improvement, or repair **of** driveways, bathrooms, garages, basements and basement waterproofing, fire protection devices, **security protection devices**, central heating and air conditioning equipment, water softeners, heaters, and purifiers, solar heating or water systems, insulation installation, siding, wall-to-wall carpeting or attached or inlaid floor coverings, and other changes, repairs, or improvements made in or on, attached to or forming a part of the residential or noncommercial property, but does not include the construction of a new residence. The term extends to the conversion of existing commercial structures into residential or noncommercial property and includes any of the above activities performed under emergency conditions.

N.J.A.C. 13:45A-16.1A. Count Three is premised upon Defendant's alleged violation of N.J.A.C. 13:45A-16.2(a)(12)(iii) which provides that "home improvement contracts which are required by

---

[6] *See Murnane v. Finch Landscaping, LLC,* 420 N.J. Super. 331, 334 (App. Div. 2011).

this subsection to be in writing, and all changes in the terms and conditions thereof, shall be signed by all parties thereto, and shall clearly and accurately set forth in legible form and in understandable language all terms and conditions of the contract, including, but not limited to, the following . . . the total price or other consideration to be paid by the buyer, including all finance charges. If the contract is one for time and materials, the hourly rate for labor and all other terms and conditions of the contract affecting price shall be clearly stated."

Defendant moves to dismiss this claim on the basis that (a) the HIP Regulations only pertain to disclosure of the purchase price of physical improvements to a home, and (b) the Alarm Agreement complies with HIP Regulations because the cost of the installation of the alarm equipment—the only arguable "physical improvement" provided for in the Alarm Agreement— was fully disclosed as "$0" in the agreement.  Moreover, Defendant maintains that Count Three fails to plead any ascertainable loss caused by this alleged regulatory violation, as required to state a claim under the NJCFA.

In response, Plaintiff maintains that the Alarm Agreement—which provides for, among other things, the installation of a security protection device—violates N.J.A.C. 13:45A-16.2(a)(12)(iii ) by failing to include the Activation Fee in its "Total Cash Price" of $1,949.61.  In addition, Plaintiff maintains that it need not plead facts showing any ascertainable loss inasmuch as Defendant conflates the requirements of a cause of action under N.J.S.A. 56:8-2 (which imposes strict liability for violations of the regulations promulgated under the CFA) with a cause of action under N.J.S.A. 56:8-19 (governing a private right of action which requires, *inter alia*, the demonstration of ascertainable loss).  Plaintiff cites to no legal authority in support of the position that a claim for violation of N.J.S.A. 56:8-2 does not require a showing of, *inter alia*, ascertainable loss.

12

Based on the facts pled, the Court finds that Plaintiff has alleged sufficient facts to allow the Court to draw the reasonable inference that Defendant violated the HIP regulations at N.J.A.C. 13:45A-16.2(a)(12)(iii), which requires that certain home improvement contracts clearly and accurately set forth in legible form and in understandable language the total price to be paid by the buyer.  In particular, Plaintiff has alleged facts suggesting that: (a) the Alarm Agreement provided for, among other things, the installation of a security protection device, which is arguably covered under N.J.A.C. 13:45A-16.1A, and (b) that she was charged an Activation Fee which was not included in the "Total Cash Price" set forth in the Alarm Agreement.

Notwithstanding the foregoing, the Court finds that Plaintiff has failed to allege a viable NJCFA claim premised on the violation of the HIP regulations.  Although Plaintiff correctly notes that "CFA claims brought by consumers as private plaintiffs can be divided, for analytical purposes, into three categories," one of which consists of violations of specific regulations promulgated under the NJCFA, the New Jersey Supreme Court has stated, as a general matter, that "a private party seeking to recover [under the NJCFA] must demonstrate that he or she has suffered an "ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 964 (2009) (citing *Meshinsky v. Nichols Yacht Sales, Inc.,* 110 N.J. 464, 472–73 (1988)).  The Court of Appeals for the Third Circuit has similarly construed a claim under N.J.S.A. 56:8-2 as requiring the plaintiff to allege unlawful conduct, an ascertainable loss and a causal relationship between the conduct and the loss.  *See generally DeLuca v. CitiMortgage*, 543 Fed.Appx. 194 n. 2 (3d Cir. 2013). Plaintiff cites to no binding legal authority suggesting that a private party asserting a violation of the New Jersey Consumer Fraud Act premised on a statutory or regulatory violation need not demonstrate that he or she suffered ascertainable loss.

Because Plaintiff has failed to allege any facts that would allow the Court to draw the reasonable inference that she suffered any ascertainable loss as a result of Defendant's alleged violation of the HIP regulations and/or that there was any causal relationship between Defendant's alleged misconduct and her alleged loss, Defendant's motion to dismiss this claim is granted. Count Three of Plaintiff's Amended Complaint is hereby dismissed without prejudice.

### D.  Count Four—Violation of the TCCWNA

Count Four alleges that Defendant violated New Jersey's Truth–in–Consumer Contract, Warranty & Notice Act ("TCCWNA"), N.J.S.A. 56:12–15-16.   In particular, the Amended Complaint alleges that a variety of provisions contained in the Alarm Agreement violate Plaintiff's clearly established statutory rights (pursuant to RISA, DDRISA and the HIP Regulations, as set forth in Counts One, Two and Three of the Amended Complaint) and that such violations, in turn, constitute a violation of the TCCWNA.   Count Four also alleges that the Alarm Agreement's interest provision (Section 2.6), limited warranty provision (Section 5), and the limitation-of-liability and indemnity provisions (Sections 15 and 16) violate clearly established New Jersey law and/or are unenforceable under New Jersey law and thus independently constitute violations of the TCCWNA.

N.J.S.A. 56:12–15 provides that:

> No seller, lessor, creditor, lender or bailee shall in the course of his business ... enter into any written consumer contract ... which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time ... the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12–15.  N.J.S.A. 56:12-16, in turn, provides that:

14

> No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act. Any such provision shall be null and void. No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that this shall not apply to warranties.

N.J.S.A. 56:12-16. A person who violates the TCCWNA is liable for a $100 civil penalty or actual damages, at the election of the consumer. N.J.S.A. 56:12–17.

Defendant moves to dismiss this claim on the basis that Plaintiff has failed to adequately plead the violation of any clearly established legal right (under state or federal law). Having determined that Plaintiff has failed to adequately allege claims for violation of RISA and DDRISA, to the extent Plaintiff's TCCWNA is premised on violations of these statutes, it too must be dismissed, without prejudice. To the extent Plaintiff's TCCWNA claim is premised on violation of the HIP regulations, the Court will allow such claim to proceed at this time (for the reasons discussed above).

Turning now to Section 2.6 of the Alarm Agreement, according to the Amended Complaint, "the sentence in Section 2.6 Credit Check. Late Fees, which states: 'In Addition, We May Impose A Late Charge On All Payments More Than Ten (10) Days Past Due In The Maximum Amount Permitted By State Law' in the Alarm Agreements that Plaintiff and those similarly situated entered into violates TCCWNA at N.J.S.A. 56:12-16" (Am. Compl., ¶ 89). The Amended Complaint does not explain, however, *how* Section 2.6 (describing imposition of late fees) violates TCCWNA. Plaintiff's brief in opposition to Defendant's motion to dismiss explains that "Section 2.6 of the Agreement violates TCCWNA . . . by failing to set forth whether New Jersey law permits interest to be charged on late payments." Paragraph 89 of the Amended

Complaint makes absolutely no reference to interest, nor does it otherwise allege sufficient facts that would allow the Court to draw the reasonable inference that the statement "We May Impose A Late Charge On All Payments More Than Ten (10) Days Past Due In The Maximum Amount Permitted By State Law" violates TCCWNA at N.J.S.A. 56:12-16.  As stated above, each count of a properly pled complaint must include all facts pertinent to that particular claim and in support of Plaintiff's theory of the claim.  Absent such factual content as it relates to Section 2.6, Defendant has not been given proper notice of the nature of the claim being asserted against it.  To the extent Count Four is premised on Section 2.6 of the Alarm Agreement, it is dismissed *without* prejudice.

As it relates to Section 5 of the Alarm Agreement, paragraph 90 of the Amended Complaint alleges that:

> The sentence in Section 5 Repair Service, which states "Some states do not allow a limitation on the duration of implied warranties or the exclusion or the limitation of consequential or incidental damages, so the above limitations or exclusions may not apply to you" (emphasis added) in the Alarm Agreements that Plaintiff and those similarly situated entered into violates TCCWNA at N.J.S.A. 56:12-16 because the provision does not state whether New Jersey does or does not allow a limitation of consequential or incidental damages arising out of a failure of the alarm system or Defendant's repairs to the alarm system.

(Am. Compl., ¶ 90).  Defendant moves to dismiss this aspect of Count Four on the basis that it is clearly a warranty provision and that TCCWNA at N.J.S.A. 56:12-16 unequivocally provides that "this shall not apply to warranties." N.J.S.A. 56:12-16.  This is the only ground upon which Defendant moves to dismiss this aspect of Count Four.  While Defendant's point is well taken, the portion of Section 5 referenced in the Amended Complaint speaks not only to the limitation on the duration of implied warranties, but also to "the exclusion or the limitation of consequential or incidental damages." (Am. Compl., ¶ 90).  Thus, a liberal reading of paragraph 90 of the Amended Complaint alleges that, pursuant to the Alarm Agreement, "[s]ome states do not allow . . . the

exclusion or the limitation of consequential or incidental damages, so the above limitation or exclusions may not apply to you." (Am. Compl., ¶ 90).  As stated above, N.J.S.A. 56:12–16 provides, in pertinent part, that "[n]o consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey."  Although the Court makes no finding as to the actual merits of this—or any—aspect of Plaintiff's TCCWNA claim, the Court finds that Plaintiff has alleged sufficient facts at this junction to support her theory that Section 5 of the Alarm Agreement constitutes a violation of TCCWNA at N.J.S.A. 56:12-16 because "the provision does not state whether New Jersey does or does not allow a limitation of consequential or incidental damages arising out of a failure of the alarm system or Defendant's repairs to the alarm system." (Am. Compl., ¶ 90).[7]  Defendant's motion to dismiss this aspect of Count Four is therefore denied.[8]

As to Sections 15 and 16 of the Alarm Agreement, paragraph 87 of the Amended Complaint alleges that:

> The Limitation of Liability term in Paragraph 15 on the reverse side of the Alarm Agreement violates TCCWNA at N.J.S.A. 56:12-15 because it is unenforceable and contrary to Defendant's statutory and common-law duties under clearly-established New Jersey law, as it purports to limit Defendant's liability to $1000.00 or twelve times the monthly services fee for any harm or damage caused by Defendant under any legal theory, which could include gross negligence or even willful or deliberate conduct.

---

[7] The Court recognizes Defendant's argument that a thorough review of Section 5 in its entirety and in its proper context reveals that "consequential and incidental damages are excluded as damages for a breach of warranty," and that, as such, this provision is exempt from TCCWNA's reach. (Def. Reply at 8).  Defendant is free to reassert this argument in support of dismissal of this claim once the record has been more fully developed.

[8] To be clear, the Court makes no finding as to the actual merits of such a claim.  The Court simply finds that Plaintiff has *alleged* sufficient facts to nudge her claim across the line from conceivable to plausible.

(Am. Compl., ¶ 87(a)).  Paragraph 87 goes on to allege that:

> The Third Party Indemnification and Subrogation term in Paragraph 16 on the reverse side of the Alarm Agreement violates TCCWNA at N.J.S.A. 56:12-15 because it is unenforceable and contrary to clearly-established New Jersey law holding that a party who is at fault may not obtain indemnification for its own wrongful acts, which under the Alarm Agreement term could include Defendant's improper or careless activity.

(Am. Compl., ¶ 87(b)).

Defendant moves to dismiss this aspect of Count Four on the basis that the Amended Complaint cites to no statutory text, legislative history, relevant precedence or determinative regulatory interpretation to show that the limitation-of-liability provision set forth in Section 15 (or the similar provision pertaining to claims by third parties contained in Section 16) is unenforceable or otherwise violates any clearly established law.  Plaintiff opposes this aspect of Defendant's motion on the basis that "both Section 15 and Section 16 of the [Alarm] Agreement purport to limit and otherwise release Vivint from liability, even if that liability were to arise from intentional, reckless, willful, or wanton misconduct." (Pl. Opp'n Br. at 29).

As stated above, the TCCWNA forbids businesses from offering a written consumer warranty "which includes any provision that violates any clearly established legal right of a consumer ... as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed." N.J.S.A 56:12–15.  As Defendant correctly notes, New Jersey courts have generally "upheld the validity of exculpatory clauses in contracts for the sale of fire and burglar alarm systems" and have found that "such clauses may insulate an alarm company from liability even for 'very negligent or grossly negligent performance.'" *Synnex Corp. v. ADT Sec. Servs.*, *Inc.*, 394 N.J. Super. 577, 588 (App. Div. 2007) ("The essential rationale of cases upholding the validity of such exculpatory clauses is that a

property owner generally will maintain insurance coverage on its property, especially if it is valuable, and that the property owner 'is in a far better position than the alarm system seller to know the property's value and to bargain with an insurance company for appropriate coverage and an appropriate premium[.]' ") (internal citations omitted).   Plaintiff cites to no binding legal authority suggesting otherwise, much less within the context of exculpatory clauses in contracts for the sale of fire or burglar alarm systems.    Moreover, generally speaking, an exculpatory provision will be enforced if "(1) it does not adversely affect the public interest; (2) the exculpated party is not under a legal duty to perform; (3) it does not involve a public utility or common carrier; or (4) the contract does not grow out of unequal bargaining power or is otherwise unconscionable." *Gershon v. Regency Diving Ctr., Inc*., 368 N.J. Super. 237, 248, (App. Div. 2004) (citing *Chemical Bank of New Jersey Nat. Ass'n v. Bailey*, 296 N.J.  Super. 515, 527, (App. Div. 1997); *Tessler & Son, Inc. v. Sonitrol*, 203 N.J. Super. 477, 482–83 (App. Div. 1985)).   Not only does Count Four fail to refer to any particular statutory text, legislative history, relevant precedence or determinative regulatory interpretation to show that the exculpatory provision(s) set forth in Sections 15 or 16 are unenforceable or otherwise violate any clearly established law, but it also fails to include any *facts* that would allow the Court to otherwise draw the reasonable inference that the exculpatory provision(s) at issue would not be enforced under New Jersey law.   For example, Count Four alleges no facts suggesting that the exculpatory provisions at issue would adversely affect the public interest, that Defendant is under a legal duty to perform under the circumstances, or that the Alarm Agreement grew out of unequal bargaining power.[9]   *See generally Gershon,* 368 N.J. Super.

---

[9] *See, e.g., Synnex*, 394 N.J Super. at 591 ("Although the contract between ADT and Synnex was an ADT form contract, there was no 'gross[ ] inequality of bargaining power' between the parties. Ibid. Synnex is a large corporation that could have negotiated for a contract without an exculpatory clause or purchased a security system from another vendor.").

at 248.  Absent such factual content, and in light of the Appellate Division's decision in *Synnex,*
394 N.J. Super. at 588, Plaintiff has failed to state a viable claim for violation of the TCCWNA at
N.J.S.A. 56:12-15 premised on the exculpatory provisions contained in Sections 15 or 16 of the
Alarm Agreement.  Defendant's motion to dismiss this aspect of Count Four is granted, without
prejudice to Plaintiff's right to file an amended claim.

### E.      Count Five—Violation of the NJCFA

Count Five alleges that Defendant engaged in the following unconscionable commercial
practices, deception, fraud, false pretenses, false promises and/or misrepresentations, in violation
of New Jersey's Consumer Fraud Act:

> a. Defendant's attempted renewal of the Alarm Agreement for 42
> additional months starting on March 5, 2012, when the Alarm
> Agreement required that all changes be in writing and signed by
> Plaintiff and specifically prohibited changes based on "oral
> statements or representations made by our sales representative";
>
> b. Defendant's refusal to cancel Plaintiff's Alarm Agreement
> notwithstanding Plaintiff's telephone calls requesting cancellation
> on February 21, 2013 and May 6, 2013, and Plaintiff's February 20,
> 2014 cancellation letter;
>
> c. Defendant's $15 processing fee charged to Plaintiff's account on
> March 21, 2014, which is not authorized by either the Alarm
> Agreement or RISA is an unconscionable commercial practice;
>
> d. Defendant's misrepresentation that Plaintiff would be liable for
> the entire balance of the Alarm Agreement if she canceled the
> contract;
>
> e. Defendant's high-pressure sales tactic of installing the alarm
> equipment immediately, upon consummating the sale, to deter
> Plaintiff from exercising her three-day right to cancel without
> penalty is an unconscionable commercial practice.

(Am. Compl., ¶¶ 93-95). Count Five further alleges that Plaintiff has suffered ascertainable losses—in the amount of all fees charged by Defendants and payments she made after the expiration of the initial term of Alarm Agreement—because of Defendant's alleged violations of the CFA.

To state a claim pursuant to the New Jersey Consumer Fraud Act ("CFA"), a plaintiff must generally allege three elements: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs' ascertainable loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 929 A.2d 1076 (2007) (internal quotations omitted). The broad definition of unlawful practice covers affirmative acts and knowing omissions, as well as regulatory violations. C*ox v. Sears Roebuck & Co.,* 138 N.J. 2, 647 A.2d 454 (1994).  When the alleged unlawful act consists of an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act. However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Id.* at 17–18.  While a "breach of warranty or contract is unfair to the non-breaching party," a breach of warranty alone is not a *per se* unlawful practice. *Id*. A claim under the NJCFA requires more; it requires that a plaintiff allege "substantial aggravating circumstances." *Suber v. Chrysler Corp.,* 104 F.3d 578, 587 (3d Cir.1997); *see also Cox*, 647 A.2d at 462. To meet this standard, a plaintiff must demonstrate that the business behavior in question "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,* 139 N.J. 392, 655 A.2d 417, 430 (1995). Additionally, to adequately state a claim under the CFA, not only must a plaintiff allege facts sufficient to establish the aforementioned elements, but such allegation must be plead with

particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See Rait v. Sears, Roebuck and Co.,* No. 08–2461, 2009 WL 250309, at \*4 (D.N.J.Feb.3, 2009); *Parker v. Howmedica Osteonics Corp.*, No. 07–2400, 2008 WL 141628, at \*3 (D.N.J.Jan.14, 2008). These requirements may be satisfied "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir.2004) (internal quotations omitted).

Count Five, as currently pled, is deficient for various reasons.  To the extent the claim is premised on Defendant's alleged misrepresentation that Plaintiff would be liable for the entire balance of the Alarm Agreement if she canceled the contract, Count Five fails to allege any specific misrepresentation(s) made by anyone in particular acting on behalf of Defendant, or when such alleged misrepresentations were made.  Certainly, Count Five contains no <u>facts</u> suggesting that Defendant (or any of its employees) had knowledge of the falsity of any particular statements it made to the Plaintiff concerning the amount she would be liable for in the event she cancelled the Alarm Agreement.  In short, Plaintiff has failed to plead the date, time and/or place of the alleged fraud by Defendant.  Nor has Plaintiff otherwise injected some measure of substantiation into its allegation of fraudulent misrepresentation as against Defendant.

To the extent Count Five is premised on Defendant's alleged breach(es) of the Alarm Agreement, Plaintiff has failed to allege sufficient facts suggesting the existence of substantial aggravating circumstances and any ascertainable loss that resulted from that particular breach (or unlawful conduct).  For example, Plaintiff alleges that a $15 processing fee charged to Plaintiff's account on March 21, 2014 by Defendant was not authorized by either the Alarm Agreement or RISA, but fails to allege that she actually paid the $15.00 fee or any other facts that would allow the Court to draw the reasonable inference that such act, even if deemed unlawful under the

NJCFA, caused her any ascertainable loss.  To establish ascertainable loss, a plaintiff "must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009); *see also Thiedemann v. Mercedes–Benz USA, LLC,* 183 N.J. 234, 248 (2005) (evidence of ascertainable loss "must be presented with some certainty demonstrating that it is capable of calculation ...").

To the extent Plaintiff's CFA claim is premised on the theory that "Defendant's high-pressure sales tactic of installing the alarm equipment immediately, upon consummating the sale, to deter Plaintiff from exercising her three-day right to cancel without penalty is an unconscionable commercial practice," Plaintiff has failed to allege sufficient facts that would allow the Court to draw the reasonable inference that such actions by Defendant "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc.,* 139 N.J. at 392.  Moreover, Plaintiff has failed to plead sufficient facts to demonstrate any ascertainable loss (that is quantifiable or measurable) that resulted from this particular alleged unlawful act.  For example, Plaintiff does not allege that "all of the representations about the product are baseless." *See Lee v. Carter–Reed Co. LLC*, 203 N.J. 496, 529 (2010) ("Under plaintiff's scenario, the ascertainable loss here is the purchase price of a bottle of broken promises" where marketing scheme was "founded on a multiplicity of deceptions").  Nor does Plaintiff allege that she paid for a product that she "did not want or need*." See Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 584 (2011) (the amount of force-placed insurance that plaintiff "did not want or need ... could constitute an 'ascertainable loss' ").  Nor does Plaintiff allege any difference in value between the product or services promised and those that she actually received.

Absent such factual content, Plaintiff has failed to plead a facially plausible claim for violation of the New Jersey Consumer Fraud Act.  Defendant's motion to dismiss this claim is granted.  Count Five is dismissed without prejudice.


**IV.    CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss is **granted.**  Counts One, Two, Three, Four and Five of the Amended Complaint are dismissed *without* prejudice.  Plaintiff may file a Second Amended Complaint that cures the pleading deficiencies discussed herein **on or before December 12, 2014**.  Plaintiff's failure to do so may result in dismissal of the Amended Complaint *with* prejudice upon application by the Defendant.

An appropriate Order accompanies this Opinion.


DATED:  November 5, 2014

s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE
