**LOWENSTEIN SANDLER LLP**
Gavin J. Rooney
Jewel M. Watson
65 Livingston Avenue
Roseland, NJ 07068
*Attorneys for Defendant Vivint, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAULETTE VENDITTO, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>VIVINT, INC F/K/A APX Alarm Security Solutions, Inc.,<br><br>    Defendant, | Civil Action No. 2:14-cv-04357-JLL-JAD |

## DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500
Attorneys for Defendant

On the Brief:
  Gavin J. Rooney
  Jewel Watson

TABLE OF AUTHORITIES ................................................................................................ ii

REPLY ARGUMENT ......................................................................................................... 1

    I.    COUNT I FAILS TO STATE A CLAIM FOR RELIEF UNDER THE CFA. ................................................................................................................ 1

        A.    The Agreement is Not a Retail Installment Contract Governed by RISA. ............................................................................. 1

        B.    Payment of an Activation Fee Does Not Create Ascertainable Loss. ............................................................................ 4

    II.    COUNT II FAILS TO STATE A CLAIM FOR RELIEF UNDER TCCWNA. .................................................................................................... 5

        A.    The Agreement Does Not Clearly Violate RISA or DDRISA. ..................................................................................................... 6

        B.    The Agreement Does Not Clearly Violate the Home Improvement Practices Regulations. ........................................... 6

        C.    The Agreement Does Not Clearly Violate the Door-to-Door Home Repair Sales Act. ........................................................... 7

        D.    The Agreement's Warranty Provision Does Not Violate N.J.S.A. 56:12-16. .................................................................. 8

    III.    COUNT III FAILS TO STATE PLAINTIFF'S INDIVIDUAL CLAIM FOR RELIEF UNDER THE CFA. ............................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Cox v. Sears Roebuck & Co.,
    138 N.J. 2 (1994) ..................................................................................................9

Galli v. Key Motorcars, LLC,
    No. L-4473-07, 2012 WL 1605222 (N.J. Sup. Ct. App. Div. May 9, 2012) ............10

In re AZEK Building Products, Inc., Marketing and Sales Practices Litigation,
    Civil Action NO. 12—6627, 2015 WL 410564 (D.N.J. Jan. 2015) .........................10

Kuzian v. Electrolux Home Products, Inc.,
    937 F.Supp. 2d 599 (3d Cir. 2013) ........................................................................10

McGarvey v. Penske Automotive Group, Inc.,
    639 F.Supp. 2d 450 (2009) ....................................................................................10

McGarvey v. Penske Automotive Group, Inc.,
    No. 08-5610, 2011 WL 1325210 (D.N.J. March 31, 2011) ................................5, 7

Perez v. Rent-A-Center, Inc.,
    186 N.J. 188 (2006) .............................................................................................1, 3

Phila. Indem. Ins. Co. v. Healy,
    156 Fed. Appx. 472 (3d Cir. 2005) .........................................................................9

Ramon v. Budget Rent-a-Car Sys., Inc.,
    2007 WL 604795 (D.N.J. Feb. 20, 2007) ................................................................4

Suber v. Chrysler Corp.,
    104 F.3d 578 (3d Cir. 1997) .................................................................................10

**STATUTES**

N.J.S.A. 17:16C-1(b) ...................................................................................................1, 2

N.J.S.A. 17:16C-50 ...........................................................................................................5

N.J.S.A. 17:16C-62(d) ......................................................................................................8

N.J.S.A. 17:16C-1(j) and -27(b) .......................................................................................5

N.J.S.A. 56:12-16 .............................................................................................................8

N.J.S.A. 12A:12-1, et seq. ...........................................................................................................9

**OTHER AUTHORITIES**

N.J.A.C. 13:45A-16.1A ...............................................................................................................6

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................1

Defendant Vivint respectfully submits this reply brief in further support of its motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6).[1]

## REPLY ARGUMENT

### I. COUNT I FAILS TO STATE A CLAIM FOR RELIEF UNDER THE CFA.

#### A. The Agreement is Not a Retail Installment Contract Governed by RISA.

In her opposition brief, Plaintiff proposes a startling expansion of RISA's scope. Specifically, she contends that RISA encompasses all contracts for the provision of an ongoing service, and even maintains that RISA applies when equipment is offered free of charge to induce a consumer to enter into an ongoing service contract. (Plaintiff's Opposition Brief ("Pb") at 8-16). These contentions are plainly wrong and contrary to the language of RISA. Moreover, if accepted Plaintiff's proffered interpretation would stand the letter and intent of RISA on its head.

Ongoing service contracts are not covered by RISA. The statute applies to the "*timed sale of goods*," where a consumer pays the sales price of goods or services over time and secures title only after completing those periodic payments. Perez v. Rent-A-Center, Inc., 186 N.J. 188, 209-10 (2006) (emphasis added). The legislative intent of RISA is to regulate financing arrangements, which is why the RISA's application is limited to "a security agreement, chattel mortgage, [or] conditional sales contract." N.J.S.A. 17:16C-1(b). All of the reported decisions applying RISA involved financing transactions, such as the rent-to-own contract at issue in Perez. Indeed, it is to secure that very financing that the consumer pays over time. While Plaintiff argues that the statutory definition of "retail installment contract" includes timed payments "substantially equivalent to" the purchase price, the same sentence also requires that

---

[1] All abbreviations used in this reply brief have the same meaning set forth in Vivint's opening brief.

the consumer only "becomes, or has the option of becoming, the owner of such goods ***upon full compliance with the terms of such retail installment contract.***" Id. (Emphasis added).

An ongoing service contract is different than the timed sale of goods or services; there, the seller provides a continuous service and the consumer pays for that service on a periodic basis. Contrary to Plaintiff's contention (Pb at 9), the fact that RISA extends to "services" as well as "goods" does not sweep all ongoing service contracts within its reach. To qualify as an installment sale of a service, the consumer would have to receive the benefit of the service and then subsequently "pay the retail price . . . in two or more installments over time." N.J.S.A. 17:16C-1(b). As with other ongoing service contracts, Plaintiff here did not receive a service and then subsequently pay for it over time. To the contrary, she paid in advance for an ongoing service on a monthly basis -- just as telecommunications, cellular, cable, gas, and electric services are provided on a continuous basis and then billed monthly to the customer. Evidently agreeing that RISA cannot possibly govern these kinds of ongoing service contracts, Plaintiff attempts to distinguish cellular, telecommunications and like contracts because (she says) they lie under the jurisdiction of the New Jersey Board of Public Utilities ("BPU"). But there is no carve-out from RISA for matters subject to BPU regulation, nor are cellular or many other monthly service contracts even regulated by the BPU at all.

No different conclusion applies when the consumer enters into a term contract for an ongoing service in lieu of a month-to-month arrangement. (Pb at 13-14). A commitment to do business for a defined period of time does not change the fact that the consumer still pays on an ongoing basis for the ongoing provision of a service. The length of time for the provision of the service is irrelevant to whether it is an installment sale. Moreover, a term agreement does not convert the arrangement into an installment sale, nor does a term commitment mean that the

consumer finances the cost of the goods or service over time. It simply means that the consumer has committed to receiving ongoing service from the provider and paying for the service for the term of the contract.

Moreover, and contrary to Plaintiff's contentions, the provision of equipment at no charge does not subject the Agreement to RISA. Plaintiff asserts that the Agreement qualifies as a retail installment contract because Vivint provided her with certain equipment for free as an inducement to enter into the ongoing servicing contract -- which she then terms a "combined installment sale of goods and services." (Pb at 14-15). But the key to determining whether goods are sold on an "installment" basis is whether the consumer acquires "title at some future time *upon payment of the full purchase price or upon the happening of some other condition or contingency*." Perez, 186 N.J. at 210 (emphasis added). Where, as here, goods are given away for free at the outset of the parties' relationship, there can be no installment sale. No provision of the Agreement rendered the transfer of that equipment conditional, and certainly nothing vested Plaintiff with title to the equipment only after making certain payments. To the contrary, the Agreement makes clear that title to the equipment transferred to Plaintiff immediately and for "$0." The only thing that the Agreement required Plaintiff to pay on a periodic basis was the "monthly service fee" in consideration of the ongoing service that Vivint provided.

That Vivint retained the right at the end of the Agreement to retrieve "our equipment" -- as distinct from Plaintiff's equipment -- does not render it a "mixed" retail installment sale of goods and services. Instead, Plaintiff's contention ironically proves that the Agreement is *not* a retail installment contract at all. The Agreement clearly states that Plaintiff received immediate ownership of the keypad, keyfob, and sensors installed on doors and

windows. See 2d Am. Compl., Ex. A, Schedule of Protection. Vivint's reference to "our equipment" refers to those materials distinct from Plaintiff's property -- specifically, the items that were always Vivint's property, such as Vivint's own signage and the technology that allowed the keypad to communicate with Vivint's monitoring network. Fatal to Plaintiff's claim, Plaintiff would never come to own any of Vivint's signage or communications equipment at any time, no matter how many monthly service payments she made. That fact disposes of the false contention that there was any installment sale here.

Plaintiff next suggests that the Court delay deciding whether the Agreement is an installment contract based upon her self-serving mischaracterization of the Agreement's plain terms. But Plaintiff cannot manufacture a claim for relief by including allegations in the Second Amended Complaint that misrepresent and directly contradict the Agreement itself. Ramon v. Budget Rent-a-Car Sys., Inc., 2007 WL 604795, at *2 (D.N.J. Feb. 20, 2007). Moreover, discovery will not cure the defect in Plaintiff's claim -- the Agreement is not an installment contract. See id. The Schedule of Protection clearly identified the equipment Plaintiff received at no cost at the outset of the Agreement -- the keypad and siren, the keyfob, and motion sensors on doors and windows. The transfer of title to those items is in no way qualified or conditional. See 2d Am. Compl., Ex. A. No discovery is required or appropriate to resolve the plain terms of the Agreement, especially with a Plaintiff who has now made *three* fruitless attempts to state a claim for relief.

**B.     Payment of an Activation Fee Does Not Create Ascertainable Loss.**

Even if the Agreement were subject to RISA, the Second Amended Complaint must still plead facts showing that Plaintiff suffered an ascertainable loss as a result of its violation to make out a CFA claim.

-4-

Plaintiff's supposed loss here is the payment of the $99 Activation Fee required by the Agreement to initiate the service. The Second Amended Complaint at paragraph 18 insists on mischaracterizing this Activation Fee as a so-called "down payment." But RISA does not outlaw either activation fees or down payments. Given their prevalence in financing arrangements, RISA in fact contemplates and permits sellers to collect down payments. See, e.g., N.J.S.A. 17:16C-1(j) and -27(b) ("Every retail installment contract shall set forth . . . [t]he down payment made by the retail buyer. . . ."). Tellingly, Plaintiff fails to alert the Court to these provisions. Moreover, the separate RISA section cited by Plaintiff, N.J.S.A. 17:16C-50, limits the fees and costs a seller may impose on the consumer when the seller exercises its legal rights, such as when repossessing goods. It does not prohibit sellers from collecting activation fees or down payments and, therefore, N.J.S.A. 17:16C-50 is inapplicable here.

Accordingly, the Second Amended Complaint fails to plead facts sufficient to demonstrate the ascertainable loss required to state a CFA claim, even if the Agreement qualified as a retail installment sales contract.

## II. COUNT II FAILS TO STATE A CLAIM FOR RELIEF UNDER TCCWNA.

In its opening brief, Vivint explained that the Second Amended Complaint does not allege any facts showing a violation of RISA, DDRISA, the HIP Regulations, DDHRSA, or Section 5 of TCCWNA -- and certainly does not contain allegations that are so clear and unmistakable to justify the imposition of TCCWNA's $100 penalty. See McGarvey v. Penske Automotive Group, Inc., No. 08-5610, 2011 WL 1325210, *4 (D.N.J. March 31, 2011) ("The New Jersey legislature intended to impose [TCCWNA] liability *only* upon those vendors whose violation of a consumer statute was so clear that no reasonable vendor could fail to know that its conduct was prohibited."). Plaintiff's brief adds nothing to alter that conclusion.

### A. The Agreement Does Not Clearly Violate RISA or DDRISA.

As explained above, the Agreement is patently *not* a retail installment contract. Further, at a minimum, the Second Amended Complaint contains no allegations demonstrating that it is "clearly established" that the Agreement qualifies as a retail installment contract under RISA and DDRISA such that no reasonable vendor could miss that point. Most charitably viewed, the Second Amended Complaint advances a convoluted and legally baseless series of contentions that mischaracterize a continuous service contract as a retail installment financing arrangement. Consequently, the Second Amended Complaint's TCCWNA theory premised on supposed violations of RISA and DDRISA fails and should be dismissed.

### B. The Agreement Does Not Clearly Violate the Home Improvement Practices Regulations.

The Agreement does not violate any "clearly established" right established by the HIP regulations because an ongoing security monitoring service lies outside their scope. The Second Amended Complaint cites no HIP regulatory violation in Vivint's installation of security equipment in Plaintiff's home free of charge; its allegations all pertain to the ongoing monitoring service provided after the installation. Plaintiff, however, contends that the HIP regulations govern that ongoing service because (she says) the regulations encompass all "labor, services, and materials rendered 'in connection [] with' a 'home improvement.'" (Pb at 25).

But the "services" encompassed by the HIP regulations are those required to improve the home. N.J.A.C. 13:45A-16.1A provides that a home improvement contract "includes all agreements under which the seller is to . . . render services for home improvements. . . ." Accordingly, the service must improve the home to fall within the regulations' scope. For example, the HIP regulations would include the services provided by a general contractor to engage various subcontractors and coordinate the construction of an addition to a home. But an

-6-

ongoing security monitoring service is neither a home improvement itself nor a service rendered to install a home improvement. If accepted, Plaintiff's theory would sweep ongoing telephone, cable television and internet services into the HIP regulations' purview; after installing the telephone line, cable or internet connection (i.e., the "home improvement"), the service provider then provides ongoing service through that line or connection -- just as Vivint provided the ongoing monitoring service to the equipment installed in Plaintiff's home. But this is plainly wrong, since neither ongoing telephone, cable, internet, nor security monitoring services are home improvements.

The Activation Fee which plaintiff says violated the HIP regulations was simply a fee charge to activate the service. Nothing in the regulations brings the provision of such an ongoing service within HIP regulations' reach. At a minimum, of course, Plaintiffs' theory is not clearly established. There is "no unambiguous statutory text, helpful legislative history, relevant precedent, or determinative regulatory interpretations" drawing security monitoring service contracts within the purview of the HIP regulations. McGarvey, 2011 WL 1325210 at *5. Indeed, the unfounded theory that Plaintiff now advances would stretch the scope of the HIP regulations well beyond their obvious intent and, therefore, does not implicate a "clearly established" right of a consumer that "no reasonable vendor could fail to" appreciate. Id., at *4. Accordingly, this TCCWNA theory fails and should be dismissed.

    **C.    The Agreement Does Not Clearly Violate the Door-to-Door Home Repair Sales Act.**

Residential security monitoring services are not a home repair and, therefore, DDHRISA does not apply to the Agreement. In her opposition brief, Plaintiff never explains why the Agreement supposedly qualifies as a "home repair contract" nor does she attempt to explain what portion of her house was purportedly "repaired." While that deficiency alone

disposes of this claim, Plaintiff also fails to explain why the security equipment does not qualify as an "appliance[] furnished for use in a home and designed to be removable without material injury to the structure," which is exempt from DDHRISA's reach even if the Agreement qualified as a home repair contract. N.J.S.A. 17:16C-62(d). Therefore, Plaintiff fails to allege facts in the Second Amended Complaint demonstrating that DDHRSA applies to the Agreement and thus this TCCWNA theory fails as well.

### D. The Agreement's Warranty Provision Does Not Violate N.J.S.A. 56:12-16.

The parties agree that N.J.S.A. 56:12-16 does not apply to warranties. They further agree that to the extent there is any ambiguity in the Agreement, that ambiguity must be read to limit the protections or benefits afforded to Vivint as its drafter. (Pb at 28, 30). These points dispose of the claim that the Agreement violates TCCWNA because it fails to advise whether the exclusion for consequential or incidental damages is enforceable in New Jersey.

The exclusion appears in the Agreement's warranty provision, Section 5, and it therefore lies outside the scope of N.J.S.A. 56:12-16. Section 5 is titled "Repair Service," and its four subsections describe, in turn, "What is Covered," "How to Get Service," "What is Not Included," and "State Law." Each of those subsections is introduced by the same opening sentence of Section 5: "During the term of this agreement we will repair or service defective parts of the system as follows . . . ." The incidental and consequential damages limitation, which appears in Section 5(C) under "What is Not Included" in the warranty, is therefore modified by this language regarding the repair of "defective parts." To dispel any doubt, Section 5(C) refers to the entirety of Section 5 as "this warranty" and Section 5 refers to its "warranty" on ten separate occasions. As a warranty provision, therefore, Section 5 lies outside the scope of this portion of TCCWNA.

-8-

There is no ambiguity in Section 5, notwithstanding Plaintiff's strained attempts to suggest that the exclusion for consequential and incidental damages could also be read to apply to non-warranty claims. But even if there were such an ambiguity, it must be resolved by choosing the narrow reading less favorable to Vivint, since Vivint drafted the document. Phila. Indem. Ins. Co. v. Healy, 156 Fed. Appx. 472, 475 (3d Cir. 2005) (ambiguities in "contracts of adhesion . . . are construed against the drafting party"). In other words, under contract-law principles the exclusion for consequential and incidental damages must be limited to warranty claims as opposed to applying broadly to any and all claims. And that means that the provisions fall within the exclusion to this TCWWNA section for warranties. Consequently, this final TCCWNA claim should be dismissed.

### III. COUNT III FAILS TO STATE PLAINTIFF'S INDIVIDUAL CLAIM FOR RELIEF UNDER THE CFA.

Plaintiff has still failed to state a CFA claim arising out of the question of whether she was bound to her oral consent to extend the term of the Agreement by a further 42 months. That is a classic breach-of-contract claim, which can be resolved with reference to contract law and the Uniform Electronic Transactions Act, N.J.S.A. 12A:12-1, et seq. For reasons unknown, however, Plaintiff has refused to plead a breach-of-contract claim despite making three attempts to state a claim for relief in the initial Complaint, the First Amended Complaint, and the Second Amended Complaint. Instead, she insists on pursuing a CFA claim seeking treble damages and attorney's fees but she cannot plead the facts necessary to establish consumer fraud.

Contract disputes are not the stuff of CFA claims, absent aggravating circumstances. Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994) ("Because any breach of warranty or contract is unfair to the non-breaching party, the law permits that party to recoup remedial damages in an action on the contract; however, by providing that a court should treble

those damages and should award attorneys' fees and costs, the Legislature must have intended that substantial aggravating circumstances be present in addition to the breach."). Plaintiff attempts to suggest the presence of aggravating circumstances by employing colorful language and hyperbole to describe Vivint's assertion of its contractual rights (e.g., that Vivint "flouted the requirements" of the Agreement, "unfairly" disagreed with Plaintiff's position, and "mislead" her in unspecified ways, all by relying upon her oral consent to extend the contract). (Pb at 31). But to transform a breach of contract claim into a CFA claim, the Second Amended Complaint must allege "facts" -- not characterizations -- that rise to the level of "bad faith or ... otherwise dishonest [conduct necessary] ... to satisfy the CFA's unconscionable commercial practice requirement." McGarvey v. Penske Automotive Group, Inc., 639 F.Supp. 2d 450, 464-65 (2009).

Indeed, the "aggravating circumstances" present in cases which allowed such CFA claims to proceed involved the defendant's making of false or dishonest statements. See Suber v. Chrysler Corp., 104 F.3d 578 (3d Cir. 1997) (car dealer stated that there was no issue with the suspension system in plaintiff's vehicle despite being notified by two dealership employees that there was such a problem); Kuzian v. Electrolux Home Products, Inc., 937 F.Supp. 2d 599 (3d Cir. 2013) (defendant "knowingly sold refrigerators that (a) would not live up to its representations, and (b) would not be replaced and could not be properly repaired within the warranty period"); In re AZEK Building Products, Inc., Marketing and Sales Practices Litigation, Civil Action NO. 12-6627, 2015 WL 410564 (D.N.J. Jan. 2015) (defendant made written representations assuring customers that its decking had superior durability to other decking alternatives, while knowing of undisclosed defects in the material); Galli v. Key Motorcars, LLC, No. L-4473-07, 2012 WL 1605222 (N.J. Sup. Ct. App. Div. May 9, 2012)

("intentional sale of merchandise already promised to another in order to get a higher price, coupled with preparation of a fraudulent purchase order, established 'substantial aggravating circumstances' beyond a mere breach of contract"). Vivint's assertion of the rights that naturally follow from its reading of the Agreement to permit contractual term extensions, confirmed by digital signature through voice recordings, does not come close to meeting this standard. To hold otherwise would collapse the distinction between CFA and breach of contract claims.

For these reasons, the Second Amended Complaint's individual CFA count should be dismissed.

Respectfully submitted,<br>
LOWENSTEIN SANDLER LLP<br>
Attorneys for Defendant<br><br>
By: _____<br>
Gavin J. Rooney

DATED: February 24, 2015